**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| **LATIN ELECTRIC WORKFORCE, INC.,** | ) ) ) |
| **Plaintiff,** | ) ) |
| **v.** | ) ) **CIV. ACT. NO.  1:20-cv-339-TFM-N** |
| **FIRST AMERICAN ELECTRIC, INC., and WEST RIVER CONSTRUCTION, LLC,** | ) ) ) ) |
| **Defendants.** | ) |

**MEMORANDUM OPINION AND ORDER**

Now pending before the Court are three cross motions for summary judgment, *Plaintiff's Motion for Summary Judgment* (Doc. 76, filed April 29, 2022) filed by Plaintiff Latin Electric Workforce, Inc., *Defendant West River Construction, LLC's Motion for Summary Judgment* (Doc. 77, filed April 29, 2022), and *Motion for Summary Judgment by First American Electric, LLC* (Doc. 78, filed April 29, 2022).  Also pending is a *Motion to Strike Portions of the Affidavit of Felix Torres* (Doc. 80, filed May 24, 2022) filed by First American Electric, LLC.  Having considered the motions, the evidentiary submissions in support of the motions, and relevant law, the Court finds Plaintiff Latin Electric Workforce's motion for summary judgment (Doc. 76) is **DENIED**, Defendant West River Construction's motion for summary judgment (Doc. 77) is **GRANTED[1]**, and Defendant First American Electric's motion for summary judgment (Doc. 78) is **DENIED**.  Further, the motion to strike (Doc. 80) is construed as objections which are **OVERRULED**.

I.    PARTIES AND JURISDICTION

---

[1] On August 16, 2022, the Court entered a Text-Only Order granting West River's motion noting an opinion would follow. This is that written opinion.

The Court will refer to Plaintiff Latin Electric Workforce, Inc., as "Plaintiff" or "Latin Electric"; Defendant West River Construction, LLC as "West River"; Defendant First American Electric, LLC as "First American"; and West River and First American collectively as "Defendants."

This Court has subject matter jurisdiction over the claims in this action pursuant to 28 U.S.C. § 1332 (diversity jurisdiction). The parties do not contest personal jurisdiction or venue, and the Court finds that sufficient support exists for both.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Background

The subject of this action revolves around the development and construction of The One Ten Apartments, a student housing project located at 110 Long Street Mobile, Alabama, which included student apartments, a Clubhouse, a Maintenance Building, Pool House, and other miscellaneous work (the "Project"). Doc. 12 ¶ 5; Doc. 77 ¶ 1; Doc. 76-1 ¶ 8. Around late 2016 and early 2017, the Project's owner, ZP No. 314, LLC ("ZP")[2] entered into an agreement with West River to serve as general contractor for the construction of the Project. Doc. 12 ¶ 5; Doc. 76-3 at 1; Doc. 77 ¶ 1; Doc. 78 ¶ 5. West River secured electrical services from Weldon Smith, who through his company All Service Construction of Texas ("ASCT"), obtained the necessary permitting to allow the electrical work to be performed at the Project. Doc. 12 ¶ 6.

ASCT entered into two agreements with Latin Electric. Doc. 78 ¶ 6. On January 21, 2017, ASCT and Latin Electric entered into the Labor Supply Agreement which required Latin Electric to supply workers to support ASCT's electricians on the Project. Doc. 78-1. Under this agreement,

---

[2] ZP is not a party to this action.

Latin Electric agreed to provide labor to perform electrical work at the Project in exchange for $325,400. Doc. 12 at 10; Doc. 76-1. This agreement is signed by Owner/Officer of ACST, Weldon Smith, and although Felix Morales is listed as the Owner/Officer of Latin Electric, the agreement is signed by Project Manager Johnnie Simpkins. Doc. 78-1 at 2. On February 9, 2017, ASCT[3] entered into a Management Agreement with Latin Electric to pay $39,600 to manage the workers that Latin Electric was to supply to the Project. Doc. 78-2. Shortly after these two agreements were executed, ASCT ceased all operations as an electrical contractor (for reasons unrelated to this action). *Id*. ¶ 8. On May 20, 2017, Doris Leikis of ASCT emailed Latin Electric to inform that ASCT started doing business as First American Electric, LLC. Doc. 76-1 ¶ 4. Subsequently, First American assumed all ASCT's rights and obligations under the agreements with Latin Electric, the parties mutually assented to the same contractual terms and work on the Project continued without interruption. *Id*. ¶ 8.

Latin Electric was paid $145,950 by West River and ZP and contends they still owe $179,450 for its performance on the Project. Doc. 12 ¶ 15; Doc. 76-1 ¶ 10; Doc. 76-3 at 4. Initially, to guarantee that Latin Electric would receive prompt payment from West River or ZP, the companies entered a Joint Check Guarantee Agreement on February 13, 2017. Doc. 12 at 12; Doc. 76-1 at 9. West River and ZP paid Latin Electric by joint checks. On March 10, 2017, West River paid Latin Electric $20,000 via check number 1120. Doc. 76-1 at 10. On April 3, 2017, ZP paid Latin Electric $31,450 via check number 195. *Id.* at 11. On April 24, 2017, ZP paid Latin Electric $49,000 via check number 226. *Id.* at 12. On May 10, 2017, ZP paid Latin Electric $45,500 via check number 240. *Id.* at 13. Latin Electric alleges that despite working all of May, June, and

---

[3] Plaintiff alleges that this agreement was between Latin Electric and Weldon Smith personally and that First American is not a party to it. *See* Docs. 76-3 at 3; 61-2.

July, the company did not receive any further payment. *See* Doc. 76-1 ¶ 10. Latin Electric then left the Project in either June or July 2017[4] and on August 25, 2017, submitted its final invoice to First American and West River in the amount of $179,450. *Id*. ¶ 12. On October 5, 2017, Latin Electric received a letter from First American that alleged:

> [O]n or about August 12, 2017, Latin Electric Workforce, LLC, and its employees, fail[ed] and refused to complete work under its contract thereby causing a **"Breach of Contract"** with First American Electric and /or West River Construction, under **Title 6, Chapter 5, Article 16, of the Alabama Civil Code**. After such breach of contract, additional electricians and subcontractors were required to complete the work Latin Electric failed and refused to complete, requiring additional costs to First American and West River.

Doc. 76-1 at 19-20. According to Latin Electric, neither First American nor West River ever provided it with notification (e.g. a deficiency list or punch list) describing any incomplete electrical work at the Project. *Id*. ¶ 13. On November 15, 2017, Latin Electric filed a mechanics lien in the amount of $179,450 against the Project and listed First American[5] as the "Hiring Party." Doc. 77 at 99–103, Ex. J.

**B. Procedural Background**

Latin Electric filed a complaint on June 30, 2020, alleging Breach of Contract (Count I), Quantum Meruit (Count II), and Attorney's Fees and Expenses of Litigation (Count III) against Defendants. Doc. 1. On August 4, 2020, Latin Electric filed an amended complaint wherein it

---

[4] Latin Electric states they left the Project in July 2017. Doc. 76-3 at 5. However, according to Weldon Smith, Latin Electric left the Project on June 24, 2017. Doc. 78-2 ¶ 10; Doc. 89 at 9 ("Sometime during the month of June 2017, Latin Electric's laborers walked off the job and never returned, without any explanation. I can say with certainty that no Latin Electric laborers performed any work on the Project after June 24, 2017, because that is the date First American started to hire replacements laborers."). Regardless, this is not a matter for the Court to resolve and remains a factual dispute.

[5] Latin Electric states the hiring party is: "ASCT, LLC AKA All American Electric," which now d/b/a First American as stated above. Doc. 77 at 100, Ex. J.

provides additional information about its entity formation. Doc. 8. On September 28, 2020, Latin Electric filed a request to again amend the complaint "to correct a misnomer in the name of Defendant First American Electric, LLC, erroneously designated as First American Electric, Inc. in the First Amended Complaint." Doc. 10. The Court granted this motion on September 29, 2020. Doc. 11. Accordingly, Latin Electric filed its Second Amended Complaint on November 5, 2020. Doc. 12. The Court notes that all the complaints allege the same cause of actions. West River filed its Answer to Second Amended Complaint on December 22, 2020. Doc. 18. On March 29, 2021, Latin Electric filed a motion for entry of default against First American. Docs. 26, 27. Latin Electric then filed a motion for default judgment, which this Court held in abeyance pending resolution of the co-defendants claims. Docs. 30, 31. On November 1, 2021, First American filed a motion to set aside clerk's entry of default, which this Court granted on December 7, 2021. Docs. 37, 47.

First American then filed a motion to dismiss on December 21, 2021. Doc. 48. Latin Electric filed a response on January 14, 2022, and First American filed a reply on January 21, 2022. Docs. 57, 58. On March 24, 2022, First American filed counterclaims against Latin Electric for Breach of Contract (Count I), violations of Alabama's Prompt Pay Act ("APPA"), ALA. CODE § 18-2-1, *et seq.* (Count II), and Work and Labor Done (Count III). Doc. 61. On March 25, 2022, First American withdrew its motion to dismiss and filed its Answer to the Second Amended Complaint. Docs. 48, 64. Accordingly, the Court denied the motion to dismiss as moot. Doc. 65.

On April 29, 2022, Latin Electric filed its motion for summary judgment to which First American and West River filed their responses in opposition. Docs. 76, 81, 82. West River and First American each filed their own motions for summary judgment to which Latin Electric responded in opposition. Docs. 77, 78, 83, 84. All parties subsequently filed their respective

replies.  Docs. 85, 86, 87, 89.

On May 24, 2022, First American filed a motion to strike portions of an affidavit.  Doc. 80.  Latin Electric filed a response in opposition on May 31, 2022.  Doc. 88.  No reply brief was filed.  All pending motions are ripe for adjudication and the Court finds that no oral argument is needed.

### III.   STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  "[T]he substantive law will identify which facts are material." *Id.* at 248, 106 S. Ct. at 2510.  At the summary judgment stage, the court does not "weigh the evidence and determine the truth of the matter," but solely "determine[s] whether there is a genuine issue for trial." *Id.* at 249, 106 S. Ct. at 2511.  The "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Tipton v. Bergrohr GMBH–Siegen,* 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party.  *Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996) (citing *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993)).  For factual issues to be considered genuine, they must have a real basis in the record.  *Id.*

The party asking for summary judgment bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be

decided at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986)).  The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing the non-moving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Id.* at 322-23, 106 S. Ct. at 2252.  A party must support its assertion that there is no genuine issue of material fact by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  FED. R. CIV. P. 56(c)(1).  The admissibility of evidence is subject to the same standards and rules that govern admissibility of evidence at trial.  *Clemons v. Dougherty County*, 684 F.2d 1365, 1369 n.5 (11th Cir. 1982) (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 556 (5th Cir. 1980)).

"When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593-94 (11th Cir. 1995) (internal quotations omitted) (citing *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553).  The court must view facts and draw all reasonable inferences in favor of the non-moving party.  *Moore v. Reese*, 637 F.3d 1220, 1231 (11th Cir. 2011) (citing *Rosario v. Am. Corrective Counseling Servs., Inc.*, 506 F.3d 1039, 1043 (11th Cir. 2007)).  However, to avoid summary judgment, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538

(1986) (citations omitted). Conclusory assertions, unsupported by specific facts, presented in affidavits opposing the motion for summary judgment are likely insufficient to defeat a proper motion for summary judgment. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888, 110 S. Ct. 3177, 3188, 111 L. Ed. 2d 695 (1990).

A filing of cross-motions for summary judgment does not affect the applicable Rule 56 standard. *See Am. Bankers Ins. Group v. United States*, 408 F.3d 1328, 1331 (11th Cir. 2005); *Page v. Winn-Dixie Montgomery, Inc.*, 702 F. Supp.2d 1334, 1345 (S.D. Ala. 2009) (citations omitted). On cross motions for summary judgment, "the facts are viewed in the light most favorable to the non-moving party on each motion." *Chavez v. Mercantil CommerceBank, N.A.*, 701 F. 3d 896, 899 (11th Cir. 2012). If any fact issues exist a trial judge must not make findings but is required to deny the motion and proceed to trial. *Warrior Tombigbee Transp. Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). Cross-motions for summary judgment may be probative of the nonexistence of a factual dispute. *Robert P. Shook et al. v. United States of America*, 713 F.2d 662, 665 (11th Cir. 1983) (citation omitted). The Eleventh Circuit has held that "[c]ross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed." *United States v. Oakley*, 744 F.2d 1553, 1555 (11th Cir. 1984) (citation omitted). If reasonable minds differ on the inferences arising from undisputed facts, summary judgment should be denied. *Warrior Tombigbee Transp. Co.*, 695 F.2d at 1296-97.

## IV.    DISCUSSION AND ANALYSIS

The Court will address First American's Motion to Strike Portions of the Affidavit of Felix Torres (Doc. 80)**,** Latin Electric's Motion for Summary Judgment (Doc. 76), West River's Motion for Summary Judgment (Doc. 77), and First American's Motion for Summary Judgment (Doc. 78)

in turn.

**A. First American's Motion to Strike Portions of the Affidavit of Felix Torres**

As a preliminary matter, motions to strike are generally disfavored as time wasters that distract the Court from the merits of a party's claim. Next, a motion to strike is not an appropriate vehicle for a general attack on an opposing parties' affidavits and evidence. Rule 12(f) of the Federal Rules of Civil Procedure only applies to pleadings. It states "[t]he court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f); *see also* 2 James Wm. Moore, *et al*., Moore's Federal Practice § 12.37[2] (3d ed. 2013) ("Only material included in a 'pleading' may be the subject of a motion to strike.... Motions, briefs or memoranda, objections, or affidavits may not be attacked by the motion to strike."). Pursuant to Rule 56 of the Federal Rules of Civil Procedure, motions to strike on summary judgment have not been appropriate since December 2010. Instead, the 2010 revised Rule 56 provides that "[a] party may object that material cited to support or dispute a fact cannot be presented in a form that would be admissible for evidence." FED. R. CIV. P. 56(c)(2). The advisory committee notes further specify that

> Subdivision (c)(2) provides that ***a party may object*** that material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence. The objection functions much as an objection at trial, adjusted for the pretrial setting. The burden is on the proponent to show that the material is admissible as presented or to explain the admissible form that is anticipated. ***There is no need to make a separate motion to strike.*** If the case goes to trial, failure to challenge admissibility at the summary-judgment stage does not forfeit the right to challenge admissibility at trial.

FED. R. CIV. P. 56, Adv. Comm. Notes, "Subdivision(c)" (2010 Amendments) (emphasis added).

First American objects to Paragraph No. 7 in its entirety, and the last sentence of Paragraph No. 8 of Felix Torres Affidavit (Doc. 76-1) pursuant to Fed. R. Civ. P. 56(e)(4). Doc. 80. Fed R. Civ. P. 56(e)(4) provides that, "[i]f a party fails to properly support an assertion of fact or fails to

properly address another party's assertion of fact as required by Rule 56(c), the court may (1) give an opportunity to properly support or address the fact … or (4) issue any appropriate order." Pursuant to Fed. R. Civ. P. 56(c)(4), "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

Paragraph No. 7 of Felix Torres's affidavit states: "In Addition to the Labor Supply Agreement, [Latin Electric] entered into a Management Agreement with Weldon Smith to supervise the [Latin Electric] workers present at the Project in exchange for $1,800.00 per week." Doc. 76-1 ¶ 7. First American contends that this paragraph should be struck because Torres's statement that Smith entered into a management agreement with Latin Electric in his individual capacity as opposed to on behalf of First American is a conclusory statement. First American argues that Torres's conclusory opinion is immaterial, irrelevant, and inadmissible as evidence. The Court finds that paragraph No. 7 does not need to be struck. The Court reasons that Torres statement is his opinion about the contract, expressing what he thinks based on his personal knowledge. Whether the contract was with Smith in his individual capacity or on behalf of ASCT is in dispute as evidenced by Smith's affidavit which directly contradicts Torres's position. Doc. 78-2 ¶ 6 ("I executed the Labor Supply Agreement on behalf of ASCT, and not in my individual capacity or on behalf of any other company."). Ultimately, where "[t]he record plainly yields sharply dueling accounts of what happened…[i]t does not utterly discredit [a party's] account." *Morton v. Kirkwood*, 707 F.3d 1276, 1285 (11th Cir. 2013). Therefore this objection is overruled.

Next, the last sentence of paragraph No. 8 of Felix Torres's affidavit states: "When [Latin Electric] left the Project at the end of July or beginning of August 2017, my understanding was that the rough in and finish electrical work had been completed." Doc. 76-1 ¶ 8. First American

contends that Torres's statement regarding his understanding that the work had been completed is hearsay. First American reasons that Torres's office is in Lawrenceville, Georgia, and there is no indication that Torres ever stepped foot on the jobsite in Mobile. Therefore, First American posits that Torres does not have the personal knowledge to make this statement, which is required pursuant to Fed. R. Civ. P. 56(c)(4) and Fed. R. Evid. 602.[6]

Latin Electric filed a response to First American's motion, wherein Plaintiff moves for leave to file the Supplemental Affidavit of Felix Torres to clarify the record. Doc. 88-1. Torres specifically explains that he "visited the jobsite to check on the status of the work and the upcoming staffing needs to complete the work" and he "visited the Project on a monthly basis . . . [including] in July, 2017, when the electrical work was being completed." Doc. 88-1 at ¶ 3. The clarification in the Supplemental Affidavit establishes that Torres does have personal knowledge to support his statement regarding the status of the Project. For good cause shown, the Court grants Latin Electric's motion for leave and considers the Supplemental Affidavit of Felix Torres in conjunction with the briefing on the summary judgment motions. When considering both affidavits together, the Court finds that the second objection is also overruled.

**B. Latin Electric's Motion for Summary Judgment**

Latin Electric argues that it is entitled to summary judgment as a matter of law on its claims against First American and West River, and First American's counterclaims and argues that it is entitled to recover interest and attorney's fees. *See generally* Docs. 76, 76-3. Latin Electric seeks a judgment in the amount of its final invoice for labor, $179,450, plus $12,000 for wire that it separately provided, which totals $191,450. Doc. 76-3 at 8-9. Latin Electric moves this Court to

---

[6] "A witness may testify to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter. Evidence to prove personal knowledge may consist of the witness's own testimony...." Fed. R. Evid. 602. Need for Personal Knowledge.

grant summary judgment on its claims of Breach of Contract (Count I), Quantum Meruit (Count II), and Attorney's Fees and Expenses of Litigation (Count III) against Defendants. Specifically, Latin Electric alleges that "West River and First American breached their agreements with Latin Electric for the Project, including the Labor Supply Agreement, the Joint Check Guarantee Agreement, and the overall agreement under which Latin Electric performed electrical work at the Project, failing and refusing to pay monies due and owing to Latin Electric for its performance." Doc. 12 ¶ 23.

The Court will address the request for summary judgment as to each Defendant in turn.

### 1. Latin Electric's Motion for Summary Judgment against First American

Latin Electric reasons that it is undisputed that First American and Latin Electric executed the Labor Supply Agreement. Doc. 12 ¶ 9; Doc. 64 ¶ 9. It is undisputed that Latin Electric was paid $145,950 of the total value of the Labor Supply Agreement, $325,400, leaving a remaining balance of $179,450. Doc. 76-3 at 8-9. However, the amount that Latin Electric is owed and whether Latin Electric completed the work it agreed to complete in the Labor Supply Agreement are both clearly and materially in dispute when reviewing the evidence.

Summary judgment is denied as to all claims because whether Latin Electric left the Project early and how much Latin Electric is owed are genuine issues of material fact. Doc. 86 at 1-2. Furthermore, whether Latin Electric entered into the Management Agreement with Weldon Smith in his individual capacity or on behalf of First American is another genuine issue of material fact.

In its motion for summary judgment, Latin Electric contends that the specific language of the agreement suggest that the agreement is between Latin Electric and Weldon Smith, not ASCT. Doc. 76-3 at 16. The management agreement states: "This Labor Agreement between Johnnie Simpkins and Weldon Smith for [Latin Electric] to Pay Weldon Smith the sum of $1800 (one

thousands [sic] eight hundred dollars) a Week from February 10, 2017 [through] July 31, 2017 to be paid weekly." Doc. 78-3. In response, First American argues that Smith did not enter any contract on this Project in his individual capacity and all Latin Electric's checks for services rendered by First American in accordance with the Management Agreement were made out to, accepted, and negotiated by First American. First American contends that if the agreement was with Smith in his individual capacity, then Latin Electric should have issued an IRS Form 1099 for 2017. First American reasons that since Latin Electric did not issue a Form 1099, it supports its argument that the agreement was not with Smith in his individual capacity.

The Court concludes that it is undisputed that the parties entered into a Management Agreement. However, the Court finds that reasonable minds differ on the inferences arising from the Management Agreement and whether Smith entered the agreement in his individual capacity or on behalf of First American's predecessor ASCT. *See Warrior Tombigbee Transp. Co.*, 695 F.2d at 1296-97. Accordingly Latin Electric's motion for summary judgment against First American is denied.

### 2. Latin Electric's Motion for Summary Judgment against First American's Counterclaims

Latin Electric also moves this Court to grant summary judgment in its favor on First American's counterclaims alleging Breach of Contract (Count I), Alabama's Prompt Pay Act (Count II), and Work and Labor Done (Count III). Docs. 61, 76-3. First American's counterclaims seek $196,410 in damages. Doc. 61 ¶ 12. First American argues that "[it] is entitled to $179,050 in damages for the breach of the Labor Supply Agreement, and $17,360 in damages for the breach of the Management Agreement." *Id.* In response, Latin Electric contends First American's claim against Latin Electric is limited to $47,779, which is the amount it claims to have paid for electrical

labor to finish the job that Latin Electric allegedly left incomplete—$1200 ASCT incurred for electrical labor and $46,779 for electrical labor incurred at the Project.  Doc. 76-3 at 9, 13.

The Court finds that Latin Electric's motion for summary judgment on First American's counterclaims is due to be denied because whether Latin Electric walked off the job is a genuine issue of material fact for resolution by the factfinder – in this case a jury.

### 3.  Latin Electric's Motion for Summary Judgment against West River

Latin Electric contends that West River is liable to Latin Electric pursuant to the Joint Check Guarantee Agreement, wherein West River allegedly agreed to pay them via joint check. Doc. 76-3 at 10.  The Joint Check Guarantee Agreement states:

> In consideration of [West River] providing materials/labor to our subcontractor, [Latin Electric], we as *(GC)* [West River] agree to pay through joint payee checks payable to [Latin Electric] and, -- for the above referenced project.  This agreement is intended to unconditionally guarantee prompt payment by the undersigned for all materials shipped, delivered, or used for this job.  A detail of each payment will be provided with each payment.

Doc. 76-1 at 9.

West River paid Latin Electric a deposit of $20,000 on March 10, 2017.  Doc. 76-1 ¶ 10. Thereafter, a series of joint checks were paid via ZP to Latin Electric and West River jointly.  *Id*. The last of these checks were paid on May 10, 2017, in the amount of $45,500 through check No. 240.  Doc. 76-1 at 13.  In its motion for summary judgment, Latin Electric alleges that despite working all of May, June, and July, the company did not receive any further payment.  Doc. 76-3 at 10.

In response, West River argues that Latin Electric's motion for summary judgment should be denied.  As relevant background, West River explains that in 2016 it entered an agreement with ZP to act as general contractor for the Project.  Doc. 82 at 1; Doc. 82-1 ¶ 4, Affidavit of West River President/CEO Mark Macneil.  West River entered a contract with J. Correa Electrical Co., LLC

("J. Correra") to perform the Project's electrical work, but subsequently learned that J. Correra was not licensed to perform electrical work in Alabama. *Id*. Smith, who worked with West River on previous projects, connected West River with Rushing Electric, Inc. ("Rushing"). *Id*. ¶ 7. On January 13, 2017, West River entered a contract with Rushing to perform electrical work on the Project for $900,000 and was informed that Smith would be Rushing's representative on the Project. *Id*. ¶ 8. On January 21, 2017, Latin Electric entered into the Labor Agreement with ASCT, which was executed by Smith acting as a member of ASCT. Regarding the Labor Agreement, Smith did not act on behalf of West River because West River is neither a party to, nor mentioned in, the Labor Agreement. *Id*. ¶¶ 9-10. However, on February 13, 2017, representatives of West River and Latin Electric signed the Joint Check Guarantee Agreement, which is the subject of Latin Electric's motion for summary judgment against West River. West River notes that the Joint Check Guarantee Agreement was not filled out properly and was not signed by a guarantor. *Id*. ¶ 11. Nevertheless, four of the five payments ZP made to Latin Electric were paid by joint check. *Id*. ¶ 14. ZP's desire to pay sub-subcontractors by joint check affected the way Rushing pay applications were handled. West River explains that Smith's assistant, Donna Leikis, submitted pay applications to West River on behalf of Rushing. *Id*. ¶ 12. Rushing's pay applications were then broken out by the amount owed to each sub-subcontractor or supplier, such as Latin Electric. *Id*. ¶ 13. Rushing's pay applications contained information about the work performed, materials supplied, and the amount due to each of its subcontractors and suppliers. *Id*. Accordingly, West River contends that ZP and West River paid Latin Electric $170,950 for work performed on the Project. *Id*. ¶ 15. On June 30, 2017, Smith instructed West River to withhold $30,000 from Rushing's May pay application because Latin Electric had not completed its work and therefore not entitled to payment. *Id*. ¶ 16. Subsequently, Latin Electric sent an invoice for $179,050 directly

to West River in August 2017. *Id.* ¶ 17. Unlike Rushing's pay applications, this invoice was not approved and submitted by Rushing and it did not provide any detailed information regarding the work Latin Electric allegedly performed. *Id.* West River notes that it has paid $974,077.52 to Rushing, its suppliers, and laborers to perform the scope of the work set forth in their electrical contract and that Rushing has never claimed West River has failed to make payments under the electrical contract. *Id.* ¶¶ 18-19. West River contends that Latin Electric's motion for summary judgment should be denied because no contract or implied contract exists between West River and Latin Electric.

The Court finds that Latin Electric is not entitled to summary judgment against West River. To establish a prima facie case for a breach of contract claim, a party must "(1) have a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Shaffer v. Regions Financial Corp.*, 29 So. 3d 872, 880 (Ala. 2009); *Reynolds Metals Co. v. Hill*, 825 So. 2d 100, 105 (Ala. 2002). The Court reasons that the Joint Check Guarantee Agreement is not a binding contract on West River and is incomplete. Specifically, the agreement is not signed by a Guarantor. *See* Doc. 77, Exhibit D. Regarding the actual execution of the agreement, the evidence is contrary to Latin Electric's argument that West River guaranteed payments. Here, the payments that Latin Electric received were issued by ZP to Latin Electric and West River. Doc. 12 ¶ 20. Having viewed the facts and drawn all reasonable inferences in favor of the non-moving party, there is no contract between Latin Electric and West River. In the instant case, the record is clear that Latin Electric does not have a contract with West River as the Labor Agreement is between Latin Electric and First American, and therefore West River lacks privity. It is also clear that the Joint Check Guarantee Agreement is not a binding contract between Latin Electric and West River. To be considered a

contract the document must convey an offer, acceptance, consideration, or mutual assent to essential terms of an agreement.  *Steiger v. Huntsville City Bd. of Educ.*, 653 So. 2d 975, 978 (Ala. 1995).  The Joint Check Agreement is not signed by a Guarantor.  Without a contract between Latin Electric and West River, Latin Electric is unable to establish that it is entitled to judgment. Accordingly, the Court finds that Latin Electric's motion for summary judgment against West River is denied.

**C. West River's Motion for Summary Judgment against Latin Electric**

In its motion for summary judgment, West River argues that it is entitled to judgment as a matter of law on each of Latin Electric's claims—Breach of Contract (Count I), Quantum Meruit (Count II), and Attorney's Fees and Expenses of Litigation (Count III).  While cross motions for summary judgment do not necessarily warrant opposite conclusions, in this case consistent with the Court's finding that Latin Electric's motion for summary judgment against West River (Doc. 76-3) is due to be denied, the Court finds that West River's motion for summary judgment against Latin Electric (Doc. 77) is due to be granted.

The Court finds that West River is entitled to summary judgment on the breach of contract claim for the same reasons the Court denied Latin Electric's motion for summary judgment against West River, as explained in the prior section.  Specifically, West River's lack of privity and the Joint Check Agreement not being signed by a Guarantor means no contract exists between West River and Latin Electric.  There is also no evidence that West River assented to the terms. Therefore, the Court finds that there is no issue of genuine material fact and summary judgment is granted in favor of West River on Latin Electric's breach of contract claim.

Next, the Court turns to Latin Electric's quantum meruit claim against West River.  Under Alabama law, "[i]n order to succeed on a claim based on a theory of quantum meruit, the plaintiff

must show that it had a reasonable expectation of compensation for its service." *Mantiply v. Mantiply,* 951 So. 2d 638, 656 (Ala. 2006) (citing *Utah Foam Prods., Inc. v. Polytec, Inc.*, 584 So.2d 1345 (Ala. 1991)). "The existence of an express contract on a given subject generally excludes an implied agreement on the same subject." *Id.* "When an express contract exists, an argument based on a quantum meruit recovery in regard to an implied contract fails." *Brannon & Guy, P.C. v. City of Montgomery*, 828 So. 2d 914, 921 (Ala. 2002). The record shows that the Labor Agreement would be an express contract between Latin Electric and First American on this subject. The degree and scope of services may be an issue between those two parties, yet its existence precludes the existence of an implied agreement on the same subject matter between Latin Electric and West River. Accordingly, West River's motion for summary judgment is granted as to Latin Electric's quantum meruit claim.

Latin Electric moves to recover attorney's fees and expenses of litigation from West River. Considering the facts in the light most favorable to the non-moving party, as the Court is required to do, the Court finds that West River's motion for summary judgment against Latin Electric's claim for attorney's fees and expenses of litigation is due to be granted. The Court reasons that Latin Electric cannot recover attorney's fees and expenses of litigation under the Alabama Prompt Pay Act because, as the Court found, a contract between Latin Electric and West River does not exist. Pursuant to Section 8-29-6 of Alabama's Prompt Pay Act, "[a] contractor, subcontractor, or sub-subcontractor may file a **civil action solely against the party contractually obligated for the payment of the amount claimed**." ALA. CODE § 8-29-6 (emphasis added). Here, Latin Electric signed a contract with Smith – either individually or on behalf of ASCT. Consequently, only Smith, ASCT, or First American (as ASCT's successor in interest), would be contractually obligated to pay the amount Latin Electric seeks. Since the substantive claims made by Latin

Electric against West River fails, the claim for attorney's fees and expenses of litigation also fails as a matter of law.

### D.  First American's Motion for Summary Judgment against Latin Electric

In its Motion for Summary Judgment, First American moves the Court to enter summary judgment as to all counts in Latin Electric's Second Amended Complaint claims—Breach of Contract (Count I), Quantum Meruit (Count II), and Attorney's Fees and Expenses of Litigation (Count III).  First American also moves for summary judgment as to all counts in First American's counterclaim against Latin Electric—Breach of Contract (Count I), Alabama's Prompt Pay Act (Count II), and Work and Labor Done (Count III).  Doc. 61.  The Court will address each claim in turn.

As stated above, to prevail on a breach of contract claim, a party must "(1) have a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages."  *Shaffer*, 29 So. 3d 872, 880 (Ala. 2009).  First American contends that Latin Electric breached the Labor Supply Agreement by failing to perform under its terms.  Doc. 78 ¶ 18.  First American specifically argues that Latin Electric "walked off the job and refused to supply any additional labor for the Project."  *Id*.  The Court finds that First American is not entitled to summary judgment on this claim because whether Latin Electric walked off the job is a genuine issue of material fact.  Accordingly, the Court denies the motion for summary judgment as to both Latin Electric's claim and First American's counterclaim on breach of contract.

First American moves for summary judgment against Latin Electric's Quantum Meruit claim because Latin Electric fails to state a claim upon which relief can be granted.  First, they argue that it is undisputed that an express contract, the Labor Supply Agreement, exists between

Latin Electric and First American and under Alabama law, the existence of an express contract on a given subject generally excludes an implied agreement on the same subject. Next, First American argues that this claim is time barred pursuant to Ala. Code Section 6-2-37, entitled "Commencement of actions – Three years." The Court will address each argument in turn.

First, the Court denies First American's motion for summary judgment against Latin Electric's quantum meruit claim and First American's Work and Labor Done claim because it is clearly disputed what services may have been rendered and accepted. Although an express contract exists between Latin Electric and First American, whether the parties performed or failed to perform the services agreed to under the Labor Supply Agreement and the value of those services performed or not performed are disputed issues of fact for a jury to determine. Though it may very well be that a directed verdict may be appropriate after presentation of evidence or upon a finding by the jury, the Court cannot presume to know what the evidence will establish at trial or what the jury's finding may be as to the scope of an express agreement. Therefore, to avoid creating any confusion, the Court declines to find at this time that a quantum meruit claim against First American fails as a matter of law. To the extent appropriate, First American may raise this issue again at trial.

Next, the Court looks to the statute of limitations. First American argues that this claim is time barred pursuant to Ala. Code Section 6-2-37, entitled "Commencement of actions – Three years." Ala. Code Section 6-2-37, provides that "[a]ctions to recover money due by open or unliquidated account, the time to be computed from the date of the last item of the account or from the time when, by contract or usage, the account is due." For the same reasons stated above, the Court cannot resolve factual issues. It is undisputed that this action was filed on June 30, 2020. However, it is unclear when the statute of limitations began to toll. There are a series of disputed

dates that the Court must leave for a jury to determine. Specifically, Latin Electric received its last payment for this Project on May 10, 2017. Latin Electric contends that they left the Project on July 30, 2017, but Smith alleges Latin Electric walked off the job and did not perform any work on the Project after June 24, 2017. Latin Electric sent First American an invoice for its unpaid work on August 25, 2017. Any of these dates may mark the beginning of the three-year statute of limitations. Accordingly, it may very well be that the jury makes findings which may then cause the statute of limitations to bar the claim, but until such time, the Court is unable to grant judgment as to whether the claims are time barred.

First American also moves for summary judgment against Latin Electric's claim for attorney's fees and expenses of litigation. Doc. 78 at 9. First American also moves for summary judgment on its Alabama Prompt Pay Act counterclaim. First American argues that the Alabama Prompt Pay Act enables a "contractor, subcontractor, or sub-subcontractor to file a civil action solely against the party contractually obligated for the payment of the amount claimed to recover the amount due." Ala. Code § 8-29-2. The Court denies both motions because there are genuine issues of material fact as to whether Latin Electric entered into the Management Agreement with First American or Weldon Smith in his individual capacity.

### V.    CONCLUSION

Based on the foregoing discussion and analysis, the Court finds the following:

1. Defendant First American Electric's objections (Doc. 80) are **OVERRULED.**

2. Plaintiff Latin Electric Workforce's motion for summary judgment (Doc. 76) is **DENIED**;

3. Defendant West River Construction's motion for summary judgment (Doc. 77) is **GRANTED**;

4. Defendant First American Electric's motion for summary judgment (Doc. 78) is **DENIED**.

**DONE** and **ORDERED** this the 24th day of August 2022.

 s/Terry F. Moorer
TERRY F. MOORER
UNITED STATES DISTRICT JUDGE